[Sac. No. 4999. In Bank.—June 30, 1938.]

MARY A. RUTHERFORD, Respondent, v. THE RIDEOUT BANK et al., Defendants; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant.

Louis Ferrari, C. H. White, George F. Jones and Keyes & Erskine for Appellant.

Elmer W. Armfield and Arthur B. Eddy for Respondent.

THE COURT.—This case was taken over by this court on petition for hearing after decision by the District Court of Appeal for the Third Appellate District. The action is brought against Robert J. Finnie and the Bank of America National Trust and Savings Association as the successor of the Rideout Bank to recover damages for fraud. A judgment for damages in the sum of $12,880 was recovered in the lower court. From this judgment the defendant bank alone appeals.

The trial court found, in accordance with the allegations of the amended complaint, that, in December, 1920, at the time of the commission of the alleged fraud, and for some years prior thereto, the plaintiff, Mrs. Rutherford, owned two parcels of real property known as the Rutherford Ranch and the Home Place; that the former was subject to a deed of trust for $30,000, not held by the bank, and the latter subject to a mortgage held by the bank in the sum of $8,000; that the plaintiff's husband died in April, 1923, and that during the time of her husband's incompetency (upon which the court made no specific finding) Mrs. Rutherford undertook the care and management of the ranch properties; that she was inexperienced and unfamiliar with such matters; that she was a depositor of the Rideout Bank and constantly and continuously consulted with the Rideout Bank in the management and care of her business and financial affairs; that she wholly and exclusively relied upon the bank and that the bank accepted her confidence and advised and counselled her during the periods alleged and that there existed during this time a confidential relation between the bank and the plaintiff upon which the plaintiff implicitly relied and acted in the transaction of her business and financial affairs. It was further found that, on December 27, 1920, the plaintiff executed a document known as the Finnie agreement and later, in compliance with it, executed and delivered to Finnie a grant deed of the Rutherford Ranch; that, prior to and at the time of the execution of the Finnie agreement, both the indebtedness secured by the trust deed on the Rutherford Ranch and that

secured by the mortgage on the Home Place were overdue and unpaid; that the plaintiff was unable to pay either indebtedness; that all these facts were known to Finnie, the Rideout Bank and to Taylor, its manager; that, with fraudulent intent to induce the plaintiff to execute the Finnie agreement and deed, the Rideout Bank, through its manager, Taylor, falsely and fraudulently represented to plaintiff as a fact and by way of counsel that if she did not execute the Finnie agreement and deed selling the Rutherford Ranch to Finnie, the bank would foreclose the mortgage of the Home Place and the holders of the trust deed on the Rutherford Ranch could and would sell her out under the trust deed and she would lose everything, that it would be better for her to sell the Rutherford Ranch for $5 an acre, if necessary, and that it was for her best interests to make the sale to Finnie on the terms of the agreement and that the consideration named therein was a fair one; that, relying on this advice of Taylor's, and believing the false representations and counsel, the plaintiff executed the agreement and deed and that if it had not been for the false representations and advice and the plaintiff's implicit belief therein she would not have executed the agreement to sell nor the deed in pursuance thereof. The court further found that all the representations were false and known by Taylor and Finnie to be false and were made for the purpose and with the design of deceiving and defrauding the plaintiff and inducing her to make the sale to Finnie; that the plaintiff received the sum of $23 an acre for the Rutherford Ranch; that at the time the reasonable market value of the land was $30 an acre and that the ranch contained 1840 acres.

The plaintiff further alleged and the court found to be true that she continued to rely upon the Rideout Bank and to believe in the truth of the representations and the good faith of the advice until on or about September 15, 1927, at which time she was handed documents evidencing the fact that Finnie paid to Taylor $2,500 as consideration for making the fraudulent representations and inducing the plaintiff to make the sale of the Rutherford Ranch to Finnie; that, prior thereto, the plaintiff had no reason or occasion to question the truth of Taylor's representations nor the good faith of his advice and that prior to this date the plaintiff had no notice or knowledge of the fraud that had been practiced upon her.

The contentions of the bank are: First, that Taylor, in making the fraudulent representations inducing the sale, was acting beyond the scope of his authority, hence no liability attached to the bank; second, that if a cause of action existed against the bank it was barred by the statute of limitations (Code of Civ. Proc., sec. 338, subd. 4); and, third, that the court failed to find upon a material issue raised by the answer, whether the statute of limitations was a bar to the action, hence the judgment is not supported by the findings and must be reversed for a new trial unless this court will exercise the power of making findings given it by section 956a of the Code of Civil Procedure.

As to the first question, the plaintiff and the bank agree upon the applicable principle of law but the plaintiff contends that at the time of making the fraudulent representations Taylor was acting within the scope of his authority as manager of the Gridley branch of the Rideout Bank while the bank argues that he was engaged in inducing the plaintiff to sell her property for an independent purpose of Finnie's and his own, that he was not authorized to engage in such transactions and hence the bank cannot be held liable.

It cannot be gainsaid that Taylor made a fraudulent use of the authority conferred upon him by the bank. Acting in the line of his known powers, he falsely and fraudulently represented to the plaintiff that unless she made the sale to Finnie the bank would foreclose its mortgage on the property known as the Home Place. That it was within Taylor's duties as manager of that branch of the bank to discuss with its debtors the action which the bank proposed to take with respect to sums owed it and encumbrances securing such sums is clear. And we are of the view that it was also within the line of his duties to discuss generally with debtors the condition of the business in which, as a creditor, the bank had an interest and the measures which the bank would approve as tending to protect its security. Especially is this so where the successive managers have, in their official capacities, undertaken to give advice in the management of business affairs in which the bank has an interest as creditor. The bank must therefore be liable for such advice when fraudulently given. The rule is clearly stated in the Restatement of the Law of Agency, sections 261 and 262.

Section 261: "A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

The illustrations and the comment found under these two sections are convincing. Under section 261 it is said: "The principal is subject to liability under the rule stated in this section although he is entirely innocent, although he has received no benefit from the transaction, and, as stated in section 262, although the agent acts solely for his own purposes. Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him."

The Restatement of the Law of Agency has been generally endorsed by this court in *Speck* v. *Wylie,* 1 Cal. (2d) 625 [36 Pac. (2d) 618, 95 A. L. R. 760], and the particular principles announced in sections 261 and 262 have been applied by this court in *Bank of California* v. *Western Union Tel. Co.,* 52 Cal. 280 (followed in *Pacific Postal Tel. Co.* v. *Bank of Palo Alto,* 109 Fed. 369 [54 A. L. R. 711]), *Otis Elev. Co.* v. *First Nat. Bank,* 163 Cal. 31 [124 Pac. 704, 41 L. R. A. (N. S.) 529], and *National Bank of San Mateo* v. *Whitney,* 181 Cal. 202 [183 Pac. 789, 8 A. L. R. 298]. See, also, *Blair* v. *Guarantee Title Co., Inc.,* 103 Cal. App. 260 [284 Pac. 719], *Ross* v. *Prudential Guar. Bldg. etc. Assn.,* 140 Cal. App. 148 [35 Pac. (2d) 176], *Mitchell Street State Bank* v. *Schaefer,* 169 Wis. 543 [173 N. W. 330], and *National City Bank* v. *Carter,* 14 Fed. (2d) 940. In the last cited case the federal court said: "Huntley was bribed so to conduct himself as vice president as to aid in defrauding the depositor. We think the bank cannot escape liability in a suit where the jury accepts this theory of fact." This language applies with equal strength to the present situation. Taylor was bribed so to conduct himself as manager of the branch bank as to aid in defrauding a depositor and a debtor. Taylor's position as manager conferred upon him potential power which he could and did use in a coercive manner in accomplishing a wrongful act under color of the office which he occupied. The result would be the same whether he kept the money for his personal use or turned it over to the bank, provided the plaintiff was damaged by the fraudulent act of

the bank's officer. It is true that the acts of the manager were not authorized by the bank and it was innocent of wrongdoing in a moral sense, but the situation is not different from the unfortunate losses which sometimes result from the dishonest acts of agents to which the principal, as such, was not a corrupt party. The appellant objects that such a rule imposes too great a burden on banking institutions. However, the conclusions we have reached herein impose no liability for advice honestly though mistakenly given. They merely make actionable dishonest or fraudulent acts committed ostensibly under sanction of the bank.

*Miller* v. *Citizens Nat. Trust and Sav. Bank of Los Angeles,* 1 Cal. App. (2d) 470 [36 Pac. (2d) 1088], is difficult to reconcile with the cases cited and the views expressed above and in so far as it is inconsistent therewith it is disapproved.

The fraud was committed in December, 1920, and this action was begun in November, 1927. Subdivision 4 of section 338 of the Code of Civil Procedure requires action to be brought within three years of the discovery of the fraud. The appellant contends that the plaintiff has failed either by pleading or proof to show that the fraud was not discovered until within three years of the bringing of the action. The complaint expressly alleges and the court found that the plaintiff had no knowledge of the fraud and no reason to suspect that a fraud had been perpetrated upon her until September 15, 1927, when there came to her hands documents evidencing the corrupt bargain of Taylor and Finnie. The record sustains this finding. It is, however, the contention of the appellant that the fraud was open and patent, that, since the slightest inquiry would have disclosed the truth, nothing but the plaintiff's inexcusable negligence kept her so long in ignorance of the fact that she had not received a fair price for her property, and finally, the additional fact which came to light in September, 1927, was not one of the facts constituting the fraud but merely Taylor's motive for committing it.

The rule is clearly stated in *Victor Oil Co.* v. *Drum,* 184 Cal. 226, 241 [193 Pac. 243] : ''The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been defrauded against those who have defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might

have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with discovery in advance of actual knowledge on his part.'' The appellant argues that the slightest inquiry would have disclosed the difference between the value of the ranch and the price offered by Finnie, the fact that the holders of the trust deed were not on the point of foreclosing and that Taylor's representations as to the bank's similar intentions were false. It is true that the plaintiff could have discovered the inadequacy of the price by inquiry but this alone would not necessarily have been sufficient to warn her of the fraud in the light of her belief in the representation, by one in whom she had implicit trust and confidence, that it was for her best interest to make the sale, even if for only $5 an acre, because otherwise she would lose everything by foreclosures. It was not until September, 1927, that she discovered this advice to have been motivated by personal gain and so was brought to question Taylor's good faith. At this point inquiry became a duty and plaintiff was chargeable with what she would discover if inquiry were made. (*Henigan* v. *Yolo Fliers Club*, 208 Cal. 697 [284 Pac. 906]; *Victor Oil Co.* v. *Drum, supra.*)

The fraud was in essence a concealed fraud; that is it consisted in Finnie's procuring Taylor to represent to the plaintiff that it was his opinion as a banker and man of business that it was highly advisable for plaintiff, in the situation in which she found herself, burdened with overdue debts and with her properties encumbered as security therefor, to accept the offer made by Finnie; that the bank of which he was the managing agent, would, unless she accepted, foreclose upon one of her properties and that the holders of the trust deed upon the other, with whom the bank had negotiated the loan, would foreclose upon it. Taylor's knowledge to the contrary was concealed despite the confidential relationship found by the trial court to exist between the bank and Mrs. Rutherford. The finding of a confidential relationship is amply sustained by the evidence (*Bank of America* v. *Sanchez*, 3 Cal. App. (2d) 238 [38 Pac. (2d) 787]), and, in view of its existence, Mrs. Rutherford cannot be charged with lack of diligence in making independent investigation either at the time or afterward. (*Barron Est. Co.* v. *Woodruff Co.*, 163 Cal. 561, 575–577 [126 Pac. 351, 42 L. R. A. (N. S.) 125]; *Marston* v. *Simpson*, 54 Cal. 189, 190.)

█ The appellant insists that the complaint was insufficient to sustain a finding upon the issue of the statute of limitations in that it did not "show the acts of fraud were committed under such circumstances that she would not be presumed to have any knowledge of them—as that they were done in secret or kept concealed" nor were the circumstances of the discovery fully stated, relying chiefly upon *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268]. In that case the ruling was on demurrer and no leave to amend had been asked, hence it was not determined whether the defects could have been cured. Here the representations constituting the fraud were plainly alleged, disclosing that the fact of the bad faith of Taylor's advice and information regarding the intention of the bank with respect to the mortgage must necessarily have been concealed from the plaintiff, and the plaintiff alleged her discovery of the fraud followed upon her receipt of the documents evidencing Finnie's payment to Taylor. In the absence of a showing that the appellant was misled by failure to plead with greater particularity the circumstances surrounding the discovery of the fraud, the complaint must be held to be sufficient in the absence of a special demurrer addressed to that defect. (*Victor Oil Co.* v. *Drum; Consolidated R. & P. Co.* v. *Scarborough,* both *supra.*)

█ The appellant's final contention is that the court failed to find upon the issue of whether the statute of limitations was a bar to the action. The court found to be true the allegation "that prior to the date last mentioned (September 15, 1927) the plaintiff had no knowledge of the herein alleged fraud and deceit, nor of any cause or notice to suspicion that fraud or deceit of any kind or character had been practiced upon her". This finding that plaintiff had no actual knowledge of the fraud nor of any fact which would lead her to suspect that a fraud had been practiced upon her, coupled with the finding of a confidential relationship, can lead to only one conclusion, that the action was not barred. It is therefore sufficient. (*Ready* v. *McDonald,* 128 Cal. 663 [61 Pac. 272, 79 Am. St. Rep. 76] ; *Spadoni* v. *Maggenti,* 121 Cal. App. 147, 156 [8 Pac. (2d) 874].)

Judgment affirmed.

Rehearing denied.