[Civ. No. 11630.   First Dist., Div. Two.   Feb. 10, 1942.]

ANGELO   GHIGLIONE,   Respondent,   v.   AMERICAN
TRUST   COMPANY   (a   Banking   Corporation),   Appel-
lant.

Brobeck, Phleger & Harrison for Appellant.

Pierce & Sherwin for Respondent.

NOURSE, P. J.—Plaintiff sued for the recovery of money upon a complaint containing three counts and had judgment on a verdict based upon the second and third counts, which sounded in fraud.

The defendant is a banking corporation maintaining a branch office in the city of Alameda where it has carried on the ordinary commercial and savings bank activities, including the drafting of documents and collecting notes for its customers and crediting the collections to the accounts of its clients. The plaintiff was the owner of considerable real property and was in the habit of dealing in real property and making loans thereon. For a number of years before the acts hereafter mentioned he maintained a savings account with the Alameda branch, but did not carry a commercial account. He is an Italian by birth, who had retired after a successful experience as a vegetable grower. He could read English a little, but could not write, except to sign his name.

Sometime before 1931 the plaintiff met Lloyd Smith, the manager of the branch bank, and the two became very close friends. The plaintiff went to Italy in 1930 for a visit and, before leaving, gave Smith a general power of attorney under which the latter withdrew $3,000 from the plaintiff's account which he loaned to his own mother. This sum was in large part repaid, and plaintiff did not learn of the transaction until some years later. During all the time plaintiff was dealing with Smith he placed full confidence in him in his relation with the bank, signed the power of attorney, withdrawal slips, and other papers without question, and permitted the bank to draw cashier's checks and withdrawal slips for him with which the bank paid his taxes and other bills. As to the power of attorney given to Smith the plaintiff testified he thought he had "signed a paper for the bank to take care of everything when I am gone."

The second cause of action pleaded rests upon the alleged fraud of defendant's agent in inducing the plaintiff to consent to the withdrawal of $4,700 from his account for the purpose of making a loan to an unidentified person. The plaintiff testified that Smith came to his house on the morning of January 6, 1936, and told plaintiff that he knew of a woman who desired to borrow $4,700 to be secured by good bonds worth about $10,000. Smith stated that the bank could not make the loan because the woman wanted to borrow the money for a period in excess of one year and hence he was bringing it to plaintiff as a good client of the bank. Smith further stated that plaintiff would be able to obtain 6 per cent interest instead of the 2 per cent which the bank paid; he further remarked that if any bond depreciated in value "we sell it before they go too low" and that "he" would have all the papers prepared. Plaintiff testified that he agreed to the transaction, signed a withdrawal slip for $4,700, left it with Smith, and the withdrawal was made on January 8, 1936. Smith later told plaintiff that "everything was O. K." but plaintiff did not ask the name of the borrower and did not see the note. Plaintiff testified that he relied on these representations and did not discover their falsity until November, 1938, when Smith was arrested for certain defalcations.

The second transaction is pleaded as the third cause of action in the complaint in which plaintiff sought recovery of $3,250 representing $2,000 noted as withdrawn from his account on December 5, 1936, and $1,250 noted as withdrawn on February 24, 1938. Plaintiff testified that, about seven

or eight months after the transaction alleged in the previous count, Smith came to his house and stated that he knew of a person who desired to make a $3,750 real estate loan; Smith made approximately the same representations as he had previously made regarding the security, interest and safety of the loan. Plaintiff testified that in reliance on such representations he signed a withdrawal slip for $3,750 which he handed to Smith, but defendant's records showed that such withdrawal was not made at any time near that date. Plaintiff relies on the withdrawal of $2,000 on December 5, 1936, and the charge against his account of $1,250 on February 24, 1938, which money he testified was not received by him. The defendant introduced testimony showing that a $2,000 deposit and a $3,250 withdrawal was made on February 24, 1938, for which it held plaintiff's receipt but the latter testified that he had not consummated such a transaction. Testimony of defendant's employees was offered to the effect that the bank did not make loans for others. Defendant's motions for nonsuit and a directed verdict were denied, and the jury returned a verdict in favor of plaintiff in the sum of $8,546.94. The court denied defendant's motions for a judgment notwithstanding the verdict and for a new trial. Defendant appeals from the judgment entered upon the verdict in favor of plaintiff.

██ The grounds of the appeal rest upon the claim that the evidence is insufficient to support the verdict, and that the trial court erred in limiting the cross-examination of respondent. The first point is based upon the statement that appellant's records, respondent's passbook, and the receipts make a prima facie case of payment of the two items questioned in the third count, and upon the statement that respondent produced no evidence that Smith received the money for the purpose of making a loan for respondent, or that the withdrawals were connected with Smith's representations regarding the proposed loan of $3,750. If this were a correct statement of the record there would be no difficulty in accepting appellant's position as sound. But the appellant has overlooked certain essential facts and circumstances which are of sufficient weight to support the inference which we must assume the jury drew in reaching its verdict. Thus the respondent testified that seven or eight months after the bond transaction Smith approached him with the same representations theretofore made and suggested that he loan $3,750

from his account upon certain real property. Smith volunteered to make up the necessary papers, and later told respondent at the bank that everything was "O. K." Respondent testified that he had no recollection of signing the withdrawal slip for $2,000 on December 5, 1936, that no cashier's check was drawn for that amount, that he did not receive that sum then or at any other time, that, since January, 1936, he did not at any time withdraw more than $300 in cash. The records of appellant show that, on February 24, 1938, respondent's balance was $2,866, that he then withdrew $3,250 and on the same day deposited $2,000. Respondent denied that he made either the withdrawal or the deposit at that time. The appellant did not call Smith or any other witness to explain these obvious discrepancies in its records, and did not controvert in any particular the plain and simple story of respondent. ■ His testimony explaining these receipts, or purported withdrawals, was of course admissible for that purpose. (10 Cal. Jur. 923 *et seq.*) From all these circumstances the jury might have inferred that the books and records being under Smith's direct control and management did not present a full and true picture of these transactions.

Appellant does not seriously contend that the evidence is insufficient to prove the transaction alleged in the second count. It cites the evidence of the receipt for $4,700 signed by respondent, but his testimony clearly explains that. There was no evidence of any character which would tend to controvert respondent's direct testimony that he did not at any time while a depositor with appellant personally withdraw such a large sum from the bank.

The real issue urged by the appellant is that the respondent failed to show that the bank was liable for the fraudulent act of its employee. The argument is that, as matter of law, the acts complained of were outside of the actual and ostensible authority of the employee. ■ The question whether an agent is acting under the actual or ostensible authority of his principal is one of fact which may be covered by direct evidence of the fact or by reasonable inferences drawn from the facts proved. Here it may be conceded that there is no evidence of actual authority. The respondent contends that he has met the requirements by proof of an apparent or ostensible authority.

The liability of the principal under such circumstances is well stated in section 261 of the Restatement of the Law of

Agency, which reads, in part: "A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

In support of his contention that the bank had clothed its manager with authority to conduct for its customers business transactions including loans to third parties, the respondent relies upon the evidence showing that, in accord with the usual custom, the manager was authorized to take money and documents from a depositor for the purpose of starting an escrow or trust, and to receive and carry out the escrow instructions. It was shown that for a period of years the bank manager had carried out respondent's instructions for the payment of his taxes and other obligations for which service the bank had accepted a nominal fee. The bank supplied its manager with printed forms and prepared notes to assist its manager in rendering a service to its customers in drafting notes given in connection with transactions between its customers. The appellant relies upon the testimony of some of its employees that it was no part of the bank's business to make loans for others. But it does not controvert the showing of the well-established custom and practice of the appellant to permit the manager to accept withdrawal slips for money deposited in the savings accounts and to transmit funds to another upon the instructions of the depositor.

In a matter of this kind the customer of the bank is not foreclosed by the secret or undisclosed instructions which the principal might have given its agent. The question whether the authority was apparent is one of fact to be determined by all the circumstances, and, upon the facts here presented, the jury was fully justified in concluding that the local manager was acting for his principal when he accepted the withdrawal slips, paid respondent's bills, and prepared the numerous documents for respondent's signature. The case thus comes squarely within the rule cited and is supported by *National Bank etc.* v. *Whitney*, 40 Cal. App. 276, 283 [180 Pac. 845]; *Lange* v. *Curtin*, 11 Cal. App. (2d) 161, 169 [53 Pac. (2d) 185]; *National Bank etc.* v. *Whitney*, 181 Cal. 202, 205 [183 Pac. 789, 8 A. L. R. 298]; *Rutherford* v. *Rideout Bank*, 11 Cal. (2d) 479, 484 [80 Pac. (2d) 978, 117 A. L. R. 383].

We cannot follow appellant's theory that the respondent should be charged with notice that the acts of the agent

were beyond the scope of his authority because they would put the bank in the loan brokerage business, contrary to law. We find no evidence that respondent was charged a fee for the suggestions that loans be made. To the contrary it appears that these suggestions were made as friendly gestures of good will and business accommodations, and that they were accepted as such by respondent.

The argument that the appellant was unduly limited in its cross-examination of the respondent is not impressive. It is said that this examination was conducted to show that the respondent had a bad memory, and thus cast doubt upon his direct testimony. It has been said frequently that the conduct of the cross-examination of a witness is within the discretion of the trial court, and that the appellate court will not interfere except upon a showing that such discretion has been abused to the prejudice of the appellant. (*Grimbley* v. *Harrold*, 125 Cal. 24, 32 [57 Pac. 558, 73 A. L. R. 19] ; 27 Cal. Jur. ''Witnesses,'' sec. 76.)

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied March 12, 1942, and appellant's petition for a hearing by the Supreme Court was denied April 2, 1942.