[Civ. No. 20228. First Dist., Div. Two. Jan. 29, 1963.]

JOHN D. WALSH, Plaintiff and Respondent, v. HOOKER & FAY, Defendant, Cross-complainant and Appellant; JOSEPH D. SCANNELL, Defendant, Cross-defendant and Respondent.

Elden C. Friel for Defendant, Cross-complainant and Appellant.

Nicholas Zoller for Plaintiff and Respondent.

No appearance for Defendant, Cross-defendant and Respondent.

AGEE, J.—Plaintiff was induced by false representations, made to him by defendant Scannell, to buy 4,000 shares of stock in Sastex Oil & Gas Co. Scannell was employed as an "account executive" or salesman by defendant Hooker & Fay, a stock brokerage firm.

Plaintiff purchased the stock in two lots, on November 7, 1956, and November 9, 1956, respectively, at a total cost of $3,606.17. He discovered the falsity of Scannell's representations on November 6, 1957, at which time the stock had a reasonable market value of $180. (Plaintiff does not object to the cut-off date of November 6, 1957, although he later sold the stock at a net to him of only $111.16.) Damages of $3,426.17 were awarded to plaintiff against both defendants, each of whom filed an appeal from the judgment. Scannell's appeal has been dismissed for failure to file an opening brief, leaving Hooker and Fay as the only appellant.

The pertinent findings of the trial court may be summarized

as follows: On or about November 1, 1956, Scannell suggested and recommended to plaintiff that he purchase stock in Sastex Oil and Gas; that for the purpose of inducing plaintiff to do so, Scannell represented to plaintiff that Sastex was backed by the Doheny interests and that they were drilling for oil in Southern California, that he had some of the stock himself, and that he had talked with one of the partners of Hooker and Fay who said (with reference to the stock), "Yes, it's all right"; that these representations were false, were known by Scannell to be untrue, and were made by him with the intent to induce the plaintiff to act in reliance thereon; that plaintiff had no knowledge or information on said stock; that he believed the representations made by Scannell and, in reliance thereon, ordered him to purchase for his account (with Hooker and Fay) 4,000 shares of Sastex stock; that Scannell, without the knowledge or consent of Hooker and Fay authorized General American and Canadian Securities, Inc., a securities brokerage firm, to make such purchase; that this firm purchased said stock (on the Calgary Stock Exchange) from an undisclosed vendor at a total cost to plaintiff of $3,606.17, of which $80 was for its commission; that Hooker and Fay paid this amount to said firm upon plaintiff's authorization; that on November 6, 1957, plaintiff discovered the falsity of the representations made by Scannell; that as the result of said false representations plaintiff was damaged in the sum of $3,426.17, that being the difference between the cost to plaintiff and the value of the stock as of the date of the discovery of the fraud; that all of the acts of Scannell above specified were done in the course of his employment by Hooker and Fay as its agent; that neither Scannell nor Hooker and Fay was the vendor or owner of said stock but instead each acted as the agent of plaintiff in connection with said stock purchase; that at all times involved herein, a fiduciary relationship existed between the plaintiff and the defendants. (1 Witkin, Summary of California Law 404, Agency and Employment § 26; *Webb* v. *Saunders,* 79 Cal.App.2d 863, 870 [181 P.2d 43]; *Kinert* v. *Wright,* 81 Cal.App.2d 919, 925 [185 P.2d 364].)

*Amendment of complaint to conform to proof.* Plaintiff's original complaint contained the following paragraph: "That on or about the 1st day of November, 1956, defendant, JOSEPH SCANNELL, as such agent [of Hooker and Fay] and in the course of his employment for defendant, HOOKER & FAY, *offered to sell* to plaintiff 4000 shares of stock of Sastex Oil and Gas Co. at a price of $3,606.00." (Emphasis ours.) Thus, the

relationship between plaintiff and the defendants was alleged to have been that of vendee-vendor.

In a memorandum opinion, filed on March 9, 1961, the trial judge stated that the evidence established that the relationship was not that of vendee-vendor but rather was that of principal and agent and was fiduciary in character; ''that the measure of damages for a violation of such a fiduciary duty is that applied to contract cases generally, i.e., the amount which will compensate the principal for all the detriment proximately caused by the breach''; that the complaint did not plead such a fiduciary relationship and, therefore, a finding to this effect could not be made; that, in the absence of such a finding, the measure of damages would be controlled by section 3343 of the Civil Code.

This section provides, generally, that one defrauded in the purchase of property is entitled to recover the difference between the actual value of that with which he parted and the actual value of that which he received.

In its original findings and conclusions, which were filed on the same day as the foregoing memorandum opinion, the trial court found that the value of the stock at the time plaintiff received it was $3,526.17, this being the quoted price of the stock on the Calgary Stock Exchange at the time it was purchased for him. The court accordingly limited damages to $80, the amount of the commission.

On March 16, 1961, plaintiff filed a motion to amend his complaint to conform to the proof. These amendments reflected the court's findings previously made and the memorandum opinion referred to above. The principal amendment requested was that the allegation, ''offered to sell to plaintiff,'' be changed to the allegation, ''suggested and recommended to plaintiff that he purchase.''

Plaintiff's affidavit in support of his motion alleged that it was not until the trial of the action that the full and accurate relationship of the parties was determined; that the facts as to this relationship were established at the trial and were uncontroverted; that no objection was interjected by defendants when this proof of relationship was developed at the trial. This affidavit was not controverted.

On April 6, 1961, the trial court granted the motion to amend the complaint and, on the same date, amended paragraphs I and XI of its findings and · paragraph I of its conclusions by adding the following: ''I. That at all times herein mentioned, defendant, Joseph Scannell, was an agent

of defendant, Hooker and Fay, a copartnership, and all of the acts hereinafter specified and done by said Joseph Scannell were done in the course of his employment for defendant, Hooker and Fay. That at all times herein mentioned, defendants, Joseph Scannell and Hooker and Fay, a copartnership, were the agents of plaintiff, and all of the acts hereinafter specified and done by said defendants, respectively, were done in the course of their employment for said plaintiff. . . . XI. That as a result of said representations plaintiff has been damaged in the sum of $3,426.17. . . . I. [Conclusions] That at all times mentioned herein a fiduciary relationship existed between the plaintiff and the defendants and that accordingly plaintiff is entitled to recover from defendants, Joseph Scannell and Hooker and Fay, the sum of $3,426.17, together with his costs of suit." Judgment was entered accordingly on April 11, 1961.

Section 473 of the Code of Civil Procedure authorizes the trial court, "in its discretion," to allow amendments to any pleading, "in furtherance of justice." In 2 Witkin, California Procedure 1605, Pleading, section 594, it is stated: "The policy of great liberality in permitting amendments at any stage of the proceeding was declared at an early date and has been repeatedly restated." (Citing authorities.) ██ The same treatise states (§ 597) : "An amendment after the conclusion of the trial, with the evidence in and arguments completed, is permissible . . . [t]o conform to proof, without introducing new evidence. Here the rule is extremely liberal." In *Eatwell* v. *Beck* (1953) 41 Cal.2d 128, 135-136 [257 P.2d 643], the Supreme Court held that, the complaint having sufficiently alleged facts of fraud and injury, it was reversible error not to permit the plaintiffs to amend their complaint to allege more clearly the facts supporting recovery on the correct rule of damages.

We find no abuse of discretion by the trial court in allowing the complaint to be amended. This being so, it follows that the trial court was required to amend its findings and conclusions in order to cover the amended allegations of the complaint.

*Respondeat Superior.* Appellant's liability to respondent for the fraudulent representations of Scannel is based upon the theory of ostensible agency. The trial court found that all of the acts of Scannell which are involved herein were done in the course of his employment by appellant. It further found, however, that appellant had no knowledge of nor did it consent to the act of Scannell in authorizing

General American to purchase 4,000 shares of Sastex for plaintiff's margin account with it.

However, respondent dealt with Scannell in the belief that Scannell was acting as the agent of appellant and we agree with the trial court that he had reasonable grounds for such belief. His prior purchases of stock made through Scannell for his account with appellant had been handled in the same way as the Sastex purchase, with the exception that, in the latter, the sale confirmation slips were on the printed form of General American instead of that of the appellant. However, respondent testified that he had not seen any significance in this. He further testified, without objection, that it was his impression that he was dealing with appellant throughout the entire transaction.

The purchase price of the Sastex stock plus the commission to General American was paid by appellant and charged to respondent's account. The stock was delivered to appellant pursuant to plaintiff's authorization and was held by it in respondent's account in the same manner as all of his other stocks. The monthly statements sent by appellant to respondent listed 4,000 shares of Sastex as "Bought or Received" by it. Appellant made an adjustment of $100 in respondent's account when an overcharge in this amount by General American was discovered. The purchase of the Sastex stock caused a debit balance in respondent's account of $3,389.29, and appellant charged respondent interest thereon at 6 per cent per annum.

Scannell testified that his duties were to place orders for customers to buy securities "and quite often we are called upon to make certain recommendations or suggestions to the people to buy securities"; that his job was to solicit accounts and handle the execution of any orders that customers placed with him; that he was assigned to certain accounts and that one of these was the respondent's.

Pertinent to appellant's liability to respondent for the acts of its agent, Scannell, are the following provisions of the Civil Code. "An agency is either actual or ostensible." (§ 2298.) "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent. . . ." (§ 2300). "An agent has such authority as the principal, actually or ostensibly, confers upon him." (§ 2315.) "Ostensible authority is such as a principal, intentionally or by want of ordinary

care, causes or allows a third person to believe the agent to possess.'' (§ 2317.) ''[A] principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, *including wrongful acts* committed by such agent in and as a part of the transaction of such business. . . .'' (§ 2338) (emphasis ours).

The theory of ostensible agency is that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person, the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him. It is immaterial that the principal receives no benefit from the transaction. (*Rutherford* v. *Rideout Bank,* 11 Cal.2d 479, 484 [80 P.2d 978, 117 A.L.R. 383]; *Brown* v. *Oxtoby,* 45 Cal.App.2d 702, 708 [114 P.2d 622]; *Ghiglione* v. *American Trust Co.,* 49 Cal.App.2d 633, 637-638 [122 P.2d 301].)

In *Grigsby* v. *Hagler* (1938) 25 Cal.App.2d 714 [78 P.2d 444], an employee overcharged his employer's customer by means of fraudulently marked sales slips and kept the extra money. The employer knew nothing of the practice but was held liable to the customer for the amount of the overcharges on the ground that the employee's fraud was committed in the scope of his employment.

In *Blackburn* v. *Witter* (1962) 201 Cal.App.2d 518 [19 Cal.Rptr. 842], a judgment for plaintiff against defendant stock brokerage firms in an action for damages for fraud was affirmed. The evidence showed that an employee of defendants acted within his ostensible authority in persuading plaintiff to buy stock in a nonexistent company and then fraudulently misused the money so obtained from plaintiff.

We are satisfied that there is substantial evidence to support the trial court's finding that all of the acts of Scannell, as related above, were done in the course of his employment by appellant and that appellant is therefore responsible to respondent for such acts.

Appellant also asserts that there is no evidence to support the trial court's finding that it, as well as Scannell, acted as an agent of the plaintiff in connection with the Sastex transaction. We do not agree. The acts and conduct of appellant, as related above, sufficiently establish this relationship. In the findings, the only acts directly attributed to appellant are those which were done *after* Scannell had placed the ''buy order'' with General American. But from there on, starting with the payment for the stock and the holding of it in

respondent's margin account, appellant was acting as respondent's agent.

*Dual agency.* Appellant states this contention as follows: ''The conduct of Scannell in acting as agent for Respondent and as agent for Hooker & Fay, at the same time, *without the knowledge* or consent of either, was a fraud on each of them, and neither was bound thereby.'' (Emphasis ours.)

The fallacy of this contention is that both principals knew of such dual agency. Respondent certainly knew that Scannell was so acting. While appellant did not know of the Sastex purchase order *at the time* it was placed with General American, it certainly had learned all about it at the time it paid the purchase price to the latter, adjusted the error of $100, added the Sastex stock to respondent's portfolio, and charged plaintiff interest on the balance owed to it because of such purchase. Appellant had assigned Scannell to handle the respondent's account and knew that Scannell had run the Sastex transaction through that account as a part of his duties under said assignment.

Appellant cites and relies upon *Vice* v. *Thacker,* 30 Cal.2d 84 [180 P.2d 4], wherein the court said, at page 90: ''It is the general rule that where an agent has assumed to act in a double capacity, a principal *who has no knowledge of such dual representation*—as the court found the fact to be with respect to plaintiff herein—may avoid the transaction.'' (Emphasis ours.) Such lack of knowledge is not present herein.

Appellant claims that it did ''avoid'' the transaction, citing the following allegation in its answer to the complaint: ''that plaintiff requested this defendant to repurchase the stock from him; and that this defendant refused to accept said stock or pay the purchase price to plaintiff.'' This apparently refers to a letter written on February 5, 1958, by *respondent* to one of the partners of Hooker and Fay. The stock was then worth only $240. Respondent asked in the letter that appellant ''sell the stock for what can be gotten out of it and make an adjustment on the remaining sum.'' Appellant did nothing.

Assuming that this inaction amounted to an avoidance or repudiation of the transaction, it comes too late to be effective. If appellant ever had the right to so avoid or repudiate, it should have acted at the time it learned of the transaction and not waited until over one year later.

Moreover, and what is really decisive of the issue, the "dual agency" rule does not apply where the two principals of the fraudulent agent do not stand in that relationship to each other. As between these two parties, appellant was the agent and respondent was the principal. Also, as pointed out above, the acts of Scannell became in law the acts of appellant, under the doctrine of respondeat superior.

*Measure of damages.* The issue is whether the trial court was required to apply section 3343 of the Civil Code, thus limiting damages to $80. This section was enacted in 1935. Sections 1709 and 3333 of the Civil Code were enacted in 1872.

Our consideration of the issue is confined to decisions rendered after section 3343 became effective, in order to determine whether a trial court is permitted to continue to apply the earlier sections to factual situations such as is involved herein.

Section 1709 provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for *any damage* which he thereby suffers." (Emphasis ours.) Section 3333 provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for *all the detriment* proximately caused thereby, whether it could have been anticipated or not." (Emphasis ours.)

The rule is now well established that, in the typical case involving a fraudulent vendor and a defrauded vendee, section 3343 provides the exclusive measure of damages. (*Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744 [192 P.2d 935]; *Garrett* v. *Perry* (1959) 53 Cal.2d 178 [346 P.2d 758]; *Lawson* v. *Town & Country Shops, Inc.* (1958) 159 Cal. App.2d 196 [323 P.2d 843]; *Clar* v. *Board of Trade* (1958) 164 Cal.App.2d 636 [331 P.2d 89]; *McNeill* v. *Bredberg* (1961) 192 Cal.App.2d 458 [13 Cal.Rptr. 580]; *Peskin* v. *Phinney* (1960) 182 Cal.App.2d 632 [6 Cal.Rptr. 389].)

An exception to the foregoing rule is recognized where a fiduciary relationship exists between the fraudulent and the defrauded parties. In *Simone* v. *McKee* (1956) 142 Cal. App.2d 307 [298 P.2d 667], the court stated at page 315: "He [appellant-broker] contends that the 'out of pocket rule' codified in section 3343 of the Civil Code is here applicable. All of the cases cited in support of this rule are cases between a vendor and vendee. None of them involve fraud

by a fiduciary. *As to such cases the much broader provisions of sections 3333 and 1709 of the Civil Code are applicable."* (Emphasis ours.)

In *Ward* v. *Taggart* (1959) 51 Cal.2d 736 [336 P.2d 534], Mr. Justice Traynor, after citing a number of recent decisions holding that section 3343 did not apply, stated, at page 741: "These cases all involved situations in which the defendant was the agent of the defrauded person or in which a confidential or fiduciary relationship existed between the parties."

In *Savage* v. *Mayer* (1949) 33 Cal.2d 548 [203 P.2d 9], the defendant-agent bought stock for plaintiff-principal at $17 a share and fraudulently represented to the latter that the purchase was made at $20 a share. Defendant contended that plaintiff's recovery was limited by section 3343 to the difference between the market value of the stock and the price paid by him, and that since no showing was made of the value of the stock at the time it was purchased, plaintiff was not entitled to recover anything. The court rejected this contention, stating that the principal's right to recover is based upon the breach of the agent's duties incident to the agency relationship and that section 3343 does not operate to limit a principal's recovery to the damages prescribed therein. In other words, if section 3343 had been held to provide the *exclusive* measure of damages in such a situation, the plaintiff-principal could only recover from the defendant-agent the difference between what he paid for the stock and its actual value at the time he received it. There being no proof as to such value, the plaintiff would therefore not have been allowed any recovery. Instead, he was allowed to recover a money judgment against his agent for the difference between the true cost of the stock and what the agent charged him.

Appellant contends that the exception to the rule established by section 3343 applies only when the agent or fiduciary has made a "secret profit" out of the transaction and that a recovery is limited to the amount of such secret profit.

However, there was no "secret profit" involved in *Nathanson* v. *Murphy,* 132 Cal.App.2d 363 [282 P.2d 174]. There the defendants owned a 763-acre ranch which they represented to the plaintiff as containing 960 acres. Plaintiff formed a corporation for the purpose of buying it. He put up $5,000 of his own money to make the down payment on behalf of the corporation. Plaintiff's plan was to sell stock in the corporation in order to finance the transaction. The ranch was

deeded to the corporation, which gave back to defendants a note and deed of trust on the property to secure the balance of the purchase price. Two months later the misrepresentation as to the acreage was discovered. All solicitations to buy stock were thereupon discontinued. The deed of trust was foreclosed and the corporation was unable to reimburse plaintiff. In an action for deceit and false representation plaintiff recovered a judgment of $5,000 against defendants.

Defendants contended that the amount of plaintiff's damages should have been limited to the difference between the $5,000 which he parted with and the value of what he received at that time, i.e., his investment in the corporation. Citing and quoting from *Sutter* v. *General Petroleum Corp.*, 28 Cal.2d 525, 533 [170 P.2d 898, 167 A.L.R.2d 271], a case which assumed that section 3343 applied, the court said: "In our case, if the stock had any value at the time of the formation of the corporation, the consequences of defendants' fraud did not arise until the discovery of the true acreage. It was then that the stock, if it had any value, became valueless and the injury to Nathanson occurred." (P. 372.)

In affirming the judgment in *Nathanson*, the court did not decide whether the measure of damages should be determined by sections 1709 and 3333 or by section 3343. It stated that, at page 372, "under either section 3333 or 1709, or both, plaintiff was entitled at least to $5,000." It also holds that a recovery of this amount is allowable under section 3343.

The chief significance of *Nathanson* is that "the actual value of that which he *received*," as used in section 3343, is fixed as of the date of the discovery of the fraud. In other words, the court did not deduct from the $5,000 the value of his investment as determined *at the time* when he parted with his money.

. *Prince* v. *Harting* (1960) 177 Cal.App.2d 720 [2 Cal.Rptr. 545], was an action brought by two partners against the third partner, alleging that the latter had violated his fiduciary duties to them by diverting profits which should have belonged to the partnership. The defendant contended that he could be held liable only for the amount of secret profits which he realized. The court rejected this contention and awarded a money judgment against him for $54,855.89, which was more than the amount of his "secret profits."

The court said, at pages 729 and 730: "His second contention is that this is not an action for fraud and deceit, but for secret profits, so that defendant can be held liable only for the

amount of the partnership's money actually traced into his pockets. He seems to concede that over $44,000 was so traced. We agree that this is not an ordinary action between vendor and purchaser for fraud and deceit. But the conclusion for which appellant contends does not follow. Neither is this an ordinary action for unjust enrichment, based upon the theory of money had and received, even though the complaint speaks of 'secret profits.' It is an action by partners against a partner, for fraudulent breach of the fiduciary duty owed by him to them. We think that such a fraudulent breach is a tort, long recognized by the courts of this state, and *one to which Civil Code, section 3343, does not apply.* The books are full of decisions involving breaches of fiduciary duties of various sorts, and we will not here attempt to review even a small part of them. Through them all runs one common thread—a determination that *the faithless fiduciary shall make good the full amount of the loss of which his breach of faith is a cause.* The theories announced are as various as the remedies available, but the result is always the same, except in those cases where the plaintiff has himself failed to seek the maximum relief that he would be entitled to obtain.'' (Emphasis ours.)

Scannell testified that he had sold Sastex to "more than fifteen" customers. It is true that the commissions on these "buys" went to General American. However, Scannell planned for a quick "sell out" if the anticipated rise in price occurred. On such sales, Scannell and appellant would receive a commission. The net proceeds would, of course, go into the customer's account and be available for further trading. The only flaw in the plan was that the stock dropped to almost zero.

To hold to the measure of damage rule contended for by appellant would work a manifest injustice. Where a stock is traded on an established stock exchange or is actively traded in "over the counter" transactions, its value at any particular time is ordinarily determined by the price at which it is then being bought and sold.

Such a rule would allow a stock broker to fraudulently induce his clients to buy a certain stock and escape liability in damages, except for the amount of the commission, by simply showing that, *at the time of the purchase,* "the actual value of that which he received" was equal to "that with

which the defrauded person parted.'' We do not think that this should be the law.

*The cross-complaint.* Hooker and Fay filed a cross-complaint against Scannell, seeking indemnity for the amount of any judgment obtained by plaintiff against it based upon Scannell's conduct.

In its findings of fact and conclusions of law the trial court made the following conclusion: ''That cross-complainant, Hooker and Fay, may recoup and recover its loss, if any, by virtue of the judgment rendered pursuant to these findings in favor of plaintiff, against cross-defendant, Joseph Scannell, by way of indemnity, but without recovery of attorney's fees.'' However, the judgment failed to mention or make any disposition of the cross-complaint. It would appear to be an inadvertence.

The law is well settled that when a judgment has been rendered against an employer or principal for damages occasioned by the unauthorized tortious act of his employee or agent, the former may recoup his loss in an action against the latter. (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 428-429 [296 P.2d 801, 57 A.L.R.2d 914]; *Popejoy v. Hannon,* 37 Cal.2d 159, 173 [231 P.2d 484]; *Warshauer v. Bauer Construction Co.* (1960) 179 Cal.App.2d 44, 49-50 [3 Cal.Rptr. 570]; 1 Witkin, Summary of California Law 411, Agency and Employment § 32; Mechem, Outlines of the Law of Agency, 4th ed., 1952, p. 365.)

As to the question of attorney fees, the cross-complaint alleges that in the event Hooker and Fay becomes entitled to indemnity from Scannell, such indemnity should include ''attorneys' fees *expended* by it in the defense of the above-entitled action.'' (Emphasis ours.) This allegation was placed in issue by Scannell's answer to the cross-complaint but was completely ignored at the trial. There is nothing upon which to base a finding as to what amount, if any, was ''expended'' by Hooker and Fay for its attorney fees. Cases involving the fixing by the trial court of the amount of ''reasonable'' attorneys' fees without any expert testimony thereon are not in point because the issue was not presented. It is true that Scannell could not be held liable for such fees in any amount greater than was reasonable. However, if this amount was more than Hooker and Fay had *expended,* his liability would be for the lesser amount. Without any testimony as to what was expended, the trial court would be unable to determine the issue.

On January 9, 1961, the trial court filed its "Announcement of Decision," which was confined to the issues raised by the complaint and the answers thereto. On January 26, 1961, the court filed a "Modification of Announcement of Decision," which covered the issues raised by the cross-complaint and Scannell's answer thereto. We agree with the following conclusion as stated therein: "There being no evidence offered at the trial concerning the costs and attorney fees expended by Hooker and Fay in the defense of plaintiff's action, we find against Hooker and Fay on that issue."

Moreover, Hooker and Fay never urged this issue in the lower court and, in fact, appears to have abandoned it. After plaintiff had presented his proposed findings and conclusions, Hooker and Fay filed numerous exceptions thereto *but made no mention of or complaint as to the following proposed conclusion*: "2. That HOOKER AND FAY may recover its loss, if any, by virtue of the judgment rendered herein in favor of plaintiff by way of indemnity against JOSEPH SCANNELL, *but without recovery of attorney's fees from* JOSEPH SCANNELL." (Emphasis ours.)

Neither did Hooker and Fay move for a new trial, which would thereby have given the trial court the opportunity to "vacate and set aside the findings and judgment and reopen the case for further proceedings and the introduction of additional evidence with the same effect as if the case had been reopened after the submission thereof and before findings had been filed or judgment rendered." (Code Civ. Proc., § 662.)

The judgment in favor of plaintiff is affirmed and the cause is remanded to the trial court with directions to render judgment on the cross-complaint in conformance with this decision.

Kaufman, P. J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 27, 1963.