MADDOX, Justice.
The issue in this case involves the liability of a lending institution for an alleged *1111 dishonest or fraudulent act committed by one of its agents, acting outside his authority.
The tendencies of the evidence are as follows: Appellants/plaintiffs Oscar and Ruby Campbell opened an account with appellee/defendant Jefferson Federal Savings & Loan Association at its Huntsville branch when that branch opened. Larry Mitchell, named as a defendant below, was manager of the Huntsville branch at that time. The Campbells did not know Mitchell except through their dealings with him at the Huntsville branch.
On December 16, 1982, Mitchell telephoned Oscar Campbell and informed him that he had a $30,000 certificate of deposit with Jefferson Federal maturing on December 23, and asked Campbell what he intended to do with the money. Campbell stated that he was going to purchase another certificate of deposit. Mitchell then explained that the purpose of his call was to see if he could borrow some of the money from Campbell and his wife. Mitchell offered to pay 12% interest, more than Jefferson Federal was paying on its certificates of deposit, and to repay the loan in monthly installments. Campbell told Mitchell he would consider making the loan.
Before agreeing, Campbell made an extensive check of Mitchell’s credit. He sought references from Dr. Jerry Bartlett, professor of business at Athens State College, and Larry Holt, vice president of First Alabama Bank of Athens, both of whom gave Mitchell favorable references. Campbell also contacted two employees of Jefferson Federal, a “Ms. Chittam” at the Huntsville branch, and a “Mr. Thrasher” at the Athens branch. They also gave Mitchell favorable recommendations. In addition, the Campbells inspected the Mitchells’ home and had it appraised.
A $15,000 loan to Mitchell was closed on December 29, 1982, at the office of an attorney Mitchell suggested. As security for the loan, the Campbells received a promissory note and a third mortgage on the Mitchells’ home. Jefferson Federal held the first mortgage on the property, and Citizens Bank of Athens was the second mortgagee.
On December 13, 1982, three days before Mitchell’s call to Campbell, Frank B. Yielding, Jr., chairman of the board and chief executive officer of Jefferson Federal, first learned that Mitchell, the manager of Jefferson Federal’s Huntsville branch, had issued “insufficient funds” checks totalling $8,200, which he had substituted for cash in Jefferson Federal’s daily deposits. Yielding called for a meeting of the officers of Jefferson Federal to discuss Mitchell’s performance, and, at this meeting, held on December 23 or 24, 1982, the officers of Jefferson Federal decided to dismiss Mitchell because of his poor performance in securing loans and accounts, and for issuing checks drawn on insufficient funds; however, Mitchell was informed only that they had decided to give him until December 31, 1982, to repay the amounts he had taken from Jefferson Federal’s daily deposits.
On December 31, 1982, Mitchell paid Jefferson Federal the $8,200 he owed, plus two months of delinquent home mortgage payments. Immediately after receiving these payments, Yielding fired Mitchell.
In early January 1983, the Mitchells defaulted on the first and third mortgages on their property, and Jefferson Federal commenced foreclosure proceedings. Citizens Bank of Athens was the successful bidder for the property, bidding $86,016.
The Campbells received only one $150 payment on their loan to Mitchell. On February 28, 1983, Oscar Campbell telephoned Yielding and told him about the loan to Mitchell. There is evidence that this was the first notice anyone connected with Jefferson Federal received regarding the loan.
On September 23, 1983, the Campbells filed suit against Jefferson Federal, alleging that Jefferson Federal helped Mitchell defraud the Campbells by allowing Mitchell to retain his position as an officer of the bank when he should have been immediately dismissed for issuing bad checks. In the *1112 same suit the Campbells also sued Mitchell and his wife Peggy, and received a default judgment against them on November 2, 1984, for $20,693.10.
The Campbells amended their complaint on July 19, 1984, to add Yielding as a defendant, and to allege counts against Jefferson Federal based on negligence and wantonness for leaving Mitchell in his position after learning of his issuing checks drawn on insufficient funds.
At trial, the court instructed the jury on the law of negligence, but refused to instruct the jury on the law of wantonness. The jury returned a verdict in favor of the defendants. The Campbells appeal here and allege that there was sufficient evidence of wantonness and that the court erred in refusing to charge the jury pursuant to §§ 261 and 262 of the Restatement of the Law of Agency (1958). (The appeal was taken only as to defendant Jefferson Federal.) We find no error and affirm the judgment of the lower court.
The Campbells’ theory of recovery is principally based upon the California Supreme Court’s case of Rutherford v. Rideout Bank, 11 Cal.2d 479, 80 P.2d 978, 117 A.L.R. 383 (1938).
Section 261 of the Restatement of the Law of Agency states:
“A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.”
Section 262 states:
“A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of this.”
Relying on these two sections of the Restatement, the Supreme Court of California, in Rideout Bank, held:
“Taylor was bribed so to conduct himself as manager of the branch bank as to aid in defrauding a depositor and a debtor. Taylor’s position as manager conferred upon him potential power which he could and did use in a coercive manner in accomplishing a wrongful act under color of the office which he occupied. The result would be the same whether he kept the money for his personal use or turned it over to the bank, provided the plaintiff was damaged by the fraudulent act of the bank’s officer. It is true that the acts of the manager were not authorized by the bank and it was innocent of wrong doing in a moral sense, but the situation is not different from the unfortunate losses which sometimes result from the dishonest acts of agents to which the principal, as such, was not a corrupt party. The appellant objects that such a rule imposes too great a burden on banking institutions. However, the conclusions we have reached herein impose no liability for advice honestly though mistakenly given. They merely make actionable dishonest or fraudulent acts committed ostensibly under sanction of the bank.”
Rutherford v. Rideout Bank, 11 Cal.2d at 484-85, 80 P.2d at 981, 117 A.L.R. at 387.
The Campbells correctly point out that in Alabama, factual questions should be taken from a jury only when there is not even a scintilla of evidence to support a holding in favor of the plaintiff. Dixie Electric Co. v. Maggio, 294 Ala. 411, 318 So.2d 274 (1975); Marshall v. Kopesky, 361 So.2d 76 (Ala.1978). However, they are incorrect in asserting that there was evidence of wantonness in this case.
In a recent case, Federal Deposit Insurance Corp. v. Franks, 473 So.2d 1018 (Ala.1985), this Court stated:
“Generally, the applicable principle is stated in 10 Am.Jur.2d Banks § 101, pp. 104-05 (1963):
“ ‘One dealing with an officer or agent of a bank is not justified in all cases in relying upon the appearance of authority in such officer or agent, but may, because of the circumstances surrounding the transaction, be put *1113 upon inquiry as to whether or not the authority of such person to act in such manner exists and is as extensive as it purports to be, especially where it appears that the officer or agent has a personal interest and may derive a personal benefit from the transaction.... The test in ascertaining whether the bank involved is bound by his act is whether the transaction is with the bank and concerns its business, or is with the officer or agent personally and his business; if of the latter character, the bank is not bound thereby_(Emphasis added).
Clearly, the evidence shows that the loan from the Campbells to the Mitchells did not involve Jefferson Federal, because it is un-controverted that Mitchell approached the Campbells seeking a loan as an individual, not in his capacity as an agent of Jefferson Federal. The Campbells contend that this amounted to investment advice, and thus, that Jefferson Federal should be held liable. We disagree. The evidence shows that the Campbells dealt with Mitchell on their own, and that they checked out the Mitchells’ ability to pay and the value of the security interest transferred to secure the debt. The general rule is stated in 10 Am.Jur.2d Banks, § 100, pp. 103-05 (1963):
“Officers of banks are held out to the public as having authority to act according to the general usage, practice, and course of business of such institutions, and their acts, within the scope of such usage, practice, and course of business, bind the bank in favor of third persons having no knowledge of a limitation on their authority. While it is true that the act of an officer or agent of a bank will bind the bank if such act is within the apparent scope of the agent’s authority and the person dealing with the officer or agent does not know of any limitation upon the authority, yet the act must be such as may fairly be deemed to be within the ordinary duties of the officer or agent. Whatever may be the extraordinary or incidental powers of the bank under its charter, power to bind the bank can be presumed to exist only in its executive agents and officers within the scope of its ordinary business and their ordinary duties.”
There was evidence presented that the act of seeking a personal loan from bank customers was not within the ordinary duties of the branch manager of Jefferson Federal. At trial, Yielding explained what the duties of a branch manager are in the following testimony elicited by the Camp-bells’ attorney:
“Q Now, what duties or responsibilities would Larry Mitchell have had as branch manager?
“A It was his duty to run the office, to obtain mortgage loans, new savings accounts, handle the accounting and report to the main office.
“Q Okay.
“A With the help of the employees that he supervised.
“Q Okay. Now, would he have solicited loans from customers?
“A Yes, sir.
“Q Does Jefferson Federal have a policy forbidding an employee from soliciting a loan — a personal loan from customers? “A Yes, sir.
“Q Are branch managers made aware of that policy?
“A Yes, sir.
[[Image here]]
“Q Okay. Is it a policy of Jefferson Federal to have a manager contact people when they have a certificate of deposit coming due.
“A No, sir.
“Q Is it unusual for that to happen?
“A Yes, sir.
“Q Prior to this conversation, had you ever heard of that happening at your bank?
“A No, sir.
U* * * *
“Q Would a personnel [sic] or employee of Jefferson Federal be dismissed for soliciting personal loans?
“A Absolutely.”
*1114 Clearly then, the trial court was correct in finding that there was not sufficient evidence to charge the jury as to wantonness on the part of Jefferson Federal under the facts presented.
Rideout Bank, supra, is distinguishable from this case. There, the plaintiff took control of a ranch when her husband died and relied exclusively upon advice from Rideout Bank officers regarding the management and control of the business. The bank manager, Taylor, was bribed into advising the plaintiff that if she did not deed the ranch property to Robert Finnie, the bank would foreclose the mortgage on a second parcel of property owned by the plaintiff, because she was unable to make the mortgage payment. The court held the bank liable for this act of its agent because the manager, in advising the plaintiff to sell the ranch and warning her of potential action by the bank, was acting within the course of his ordinary duties. In the present case, the evidence presented showed not only that Mitchell was not authorized to borrow money from Jefferson Federal customers, but that the action was against the expressed policy of the bank. Clearly, then, no grounds existed for charging the jury on wantonness, and the trial court was correct in refusing the Camp-bells’ requested charges.
Also, we note that Mitchell sought the loan from the Campbells on December 16, 1982, prior to Jefferson Federal’s decision to dismiss Mitchell, which was made on December 23 or 24, 1982. Therefore, the Campbells’ argument that Jefferson Federal, by leaving Mitchell in his position after threatening him with dismissal, caused Mitchell to defraud the Campbells is not supported by the evidence. Mitchell had already sought the loan before Jefferson Federal made the decision to dismiss him.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.