[Civ. No. 66.  Fifth Dist.  Mar. 16, 1962.]

PEARL MAE BLACKBURN, Plaintiff and Respondent, v. DEAN WITTER et al., Defendants and Appellants.

Park & Shenk and Samuel C. Shenk for Defendants and Appellants.

Hancock & Lundgren and William R. Lundgren for Plaintiff and Respondent.

STONE, J.—Respondent is the widow of a dairy farmer who died in 1954. That same year she was introduced to a Mr. Long, an employee of Walston and Company. Respondent was without business experience, and she had no family to advise her. She selected Long as her investment advisor. He called upon her approximately once a month, and suggested stocks to buy and when to buy them, and told her which stocks to sell and when to sell. Long ceased working for Walston and Company February 28, 1957. He became a representative of Dean Witter and Company March 4, 1957, and continued to act as financial counselor for respondent until he was discharged by Dean Witter February 14, 1958.

During the year 1957, while employed by Walston and Company, Long persuaded Mrs. Blackburn to invest in a nonexistent company which he called American Commercial Investment Company. Long told Mrs. Blackburn that she could get a higher rate of interest from American Commercial than she had realized from stocks which she had purchased in the past. Long represented that the American Commercial Investment Company was a large, growing concern engaged in heavy construction, and that the company was both willing and able to pay 10 per cent interest. She obtained the money to invest by selling some of her stock through Long acting as agent for his employer. For the money "invested" Long gave respondent commercial "rediform" receipts, which he later supplemented by promissory notes bearing 10 per cent interest. When respondent asked Long why the receipts and the notes were not written on company stationery, Long replied that the company was new and that its stationery was being printed.

Respondent, on cross-examination, admitted that for other

stock purchased from Walston and Company she had received a different type of receipt than the "rediform" given her by Long, that checks to purchase stock were made payable to Walston and Company or Dean Witter and Company, and that the stock was issued to her directly by Walston and Company or Dean Witter and Company. Mrs. Blackburn also admitted that each month she received a summary or transaction sheet from Walston and Company or Dean Witter, setting forth all transactions between her and the. brokerage house for the preceding month. None of the transactions between her and Long concerning the American Commercial Investment Company appeared on any of the monthly reports.

Mrs. Blackburn testified that she had confidence in Long, that he had been a trustworthy counselor up to the time of the American Commercial transaction, and that she did not doubt his statements. Respondent also testified that she believed Long's representation that he was acting for his employer and that the investment was recommended as the result of research conducted by the brokerage companies.

Appellants presented testimony by officials of Walston and Company and Dean Witter and Company concerning the limitations placed upon the authority of their account executives or investment representatives, and the limitations imposed by the New York Stock Exchange and the Securities Exchange Commission. However, it was not shown that these limitations were made known to respondent.

The trial court, on the theory of ostensible authority, entered judgment in favor of respondent and against appellants Dean Witter and Company and its bonding agency, Firemans Fund Insurance Company, and against appellants Walston and Company, Inc., and its bonding agency, Massachusetts Bonding and Insurance Company.

If there is liability, it must rest on the theory of ostensible agency since Long clearly had no authority as an employee of either Walston and Company or Dean Witter and Company to borrow money for his personal use, or to take money from a client and give his personal note rather than a security for it. Ostensible authority is defined by Civil Code, section 2317, as follows: "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

The conditions under which a principal is bound by the acts of his agent under the theory of ostensible or apparent agency are delineated in Civil Code, section 2334, which pro-

vides: "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof."

In applying the foregoing provisions of the Civil Code, the courts of California have adopted the principle expressed in section 261 of the Restatement of the Law of Agency. In *Rutherford* v. *Rideout Bank*, 11 Cal.2d 479 [80 P.2d 978, 117 A.L.R. 383], at pages 483-484, it is said: "The rule is clearly stated in the Restatement of the Law of Agency, sections 261 and 262.

"Section 261: 'A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.'

"The illustrations and the comment found under these two sections are convincing. Under section 261 it is said: 'The principal is subject to liability under the rule stated in this section although he is entirely innocent, although he has received no benefit from the transaction, and, as stated in section 262, although the agent acts solely for his own purposes. Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.' " (See also *Filippi* v. *McMartin*, 188 Cal.App.2d 135, 138 [10 Cal.Rptr. 180] ; *Duarte* v. *Postal Union Life Ins. Co.*, 75 Cal.App.2d 557, 573 [171 P.2d 574] ; 1 Witkin, Summary of California Law, Agency & Employment, § 80, p. 454.)

Appellants argue that the facts of this case do not bring it within the rationale of Civil Code section 2334 or the Restatement of Agency quoted above, because respondent, as a reasonable person of ordinary prudence, should not have been misled by Long. It is contended that the transaction whereby respondent gave Long the money and took back a receipt and a note, differed so radically from the stock purchase and sale transactions previously had with Long, that it cannot be said that respondent was misled. Appellants ably argue that as a reasonable person, respondent must have known that Long was acting for himself and not on behalf of either brokerage house when he took her money for investment. However, the trial court found to the contrary, and the familiar rule that the trier of fact is the sole judge of the credibility of the wit-

ness and of the weight of the evidence, is applicable. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) It was aptly said in *Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384], that: "Of course, all of the evidence must be examined, but it is not weighed. All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact."

The test is not whether there is a conflict in the evidence, but whether there is evidence of a substantial nature that will sustain the finding of the trial court. (See *Crogan* v. *Metz*, 47 Cal.2d 398, 404 [303 P.2d 1029], and authorities cited therein.) Substantial evidence to support the finding of the trial court can be found in the record. Long testified:

"Q. And didn't you advise her that Walston & Company and Dean Witter and Company had research divisions that told when to buy and when to sell stock? A. Yes, I think I did.

"Q. And didn't you tell her that the stock that she sold at that time, it was the proper time to sell the stock? A. More than likely I did.

"Q. And that she could get a better investment this way —— A. (Inter'g) Yes.

"Q. (Cont'g) —— through the note? And that, as far as you know, when you said to buy the note, that that would also be inferred that it was from the research division? A. Yes."

This bit of testimony serves to show that the research services which appellants brokerage houses used to induce customers to rely upon them for advice, contributed to the fraud in this case. It also presents the rather nice question of how appellants can concede that the part of the transaction by which respondent sold her stock through Long and the brokerage house to obtain the money was within the scope of Long's agency, while the part of the transaction whereby Long received the proceeds of the stock sale was not within the scope of his apparent authority. In short, it is difficult to see how appellants can accept the benefits of the sale of the stock by Long as their agent and deny liability for the fraudulent misuse of the money obtained by the sale of the stock. (*Gift* v. *Ahrnke*, 107 Cal.App.2d 614, 623 [237 P.2d 706].)

Perhaps the evidence which we deem substantial in support of the judgment can best be expressed by quoting from the

written opinion of the trial court, wherein the evidence is summarized thusly:

"A review of the testimony will indicate that plaintiff was an elderly widow who depended largely for her livelihood on her investments. She is not versed in business nor business transactions. She had been referred to Mr. Long by a friend, and Mr. Long visited her and discussed stock transactions. In regular stock transactions plaintiff would receive immediate confirmation from Walston and Company or Dean Witter and Company, as the case might be, would receive stock certificates from Walston or Dean Witter, would receive checks of Walston and Company or Dean Witter and Company, or would receive monthly statements from said companies. In the transactions at hand no such documents were received by plaintiff. Defendant Long gave plaintiff 'promissory notes' signed by Long or plain receipts. In the regular transactions he would give a company receipt or the check would be made out to the particular stock brokerage house. Plaintiff inquired of defendant Long regarding these discrepancies and defendant stated that the new receipts or the new documents had not been printed. He stated that he was the new trustee and was acting for Walston and Company or Dean Witter and Company. She was justified in believing Long. In fact, Mr. Morrison of Dean Witter and Company said it was easy to have faith and confidence in Mr. Long, and that he did not believe that Long would defraud anyone. Mr. Smith of Walston and Company stated that Walston and Company knew Long was drinking in excess, gambling heavily, and encouraging customers to buy and sell stock merely for the purpose of promoting volume so that his commissions would be greater. Walston and Company did nothing to advise the customers of this nor of any stock exchange, customer or agent regulations. Walston and Company and Dean Witter and Company knew that this is a highly specialized and technical business, and customers rely on their employees for advice, guidance and consultation. In this case, brokerage houses placed defendant Long in position to defraud their customers. It is the finding of the Court that plaintiff acted with ordinary care."

Aside from the question of agency, appellant Walston and Company also attacks the sufficiency of the evidence to sustain the finding that it is liable for the amount of money advanced by respondent to Long and for which he gave a promissory note dated October 1, 1957. The complaint alleged that the money was advanced on or about January 1, 1957. Some con-

fusion arose during the course of the trial as a result of testimony concerning the date of the note and the date that the money was actually advanced. Respondent testified that to the best of her recollection the money was given to Long about January 1, even though the note was dated October 1, 1957. She also testified that when she gave Long the $5,000 evidenced by the note, he was working for Walston and Company. Long testified that the money was advanced prior to the date the note bears. His testimony was in some respects conflicting, but he did testify that when the money was advanced for the particular note in question he was working for Walston and Company. Receipts given by Long to respondent support his testimony in regard to the date the money was actually delivered to him. Since this is an action to recover money on the ground of fraud, the time the money was delivered to Long is important, not the date the note bears.

The judgment is affirmed.

Conley, P. J., and Brown, J., concurred.