**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**FIRST SECURITIES COMPANY OF CHICAGO, Defendant.**

**Olga Hochfelder et al., Claimants-Appellants,**

**Keith S. McKy, Receiver-Appellee,**

**Customer Creditors Committee, Committee-Appellee.**

No. 71-1272.

United States Court of Appeals, Seventh Circuit.

April 12, 1972.

Rehearings Denied May 2, and May 8, 1972.

Certiorari Denied Oct. 10, 1972. See 93 S.Ct. 85.

See also, 7 Cir., 466 F.2d 1035.

Philip A. Loomis, Jr., Washington, D. C., John I. Mayer and Joseph L. Grant, Chicago, Ill., for Securities Exchange Commission.

Donald Vetter, Leon M. Despres, Albert Schwartz, Alex Elson, Willard Lassers, Aaron S. Wolff, Willard L. King, Stanley N. Gore, King, Robin, Gale & Pillinger, Elson, Lassers & Wolff, Chicago, Ill., for appellants.

Samuel H. Young, Charles Aaron, Michael L. Weissman, Aaron, Aaron, Schimberg & Hess, Chicago, Ill., for appellee.

Before SWYGERT, Chief Judge, and HASTINGS, Senior Circuit Judge, and SPRECHER, Circuit Judge.

SWYGERT, Chief Judge.

This is an appeal from the disallowance of fifteen claims of individuals in the total amount of $972,500 asserted against the assets of a securities brokerage firm with regard to which an equitable receivership is in progress in the district court. The defendant in the equitable receivership, First Securities Company of Chicago (hereinafter, "First Securities"), was registered with the Securities and Exchange Commission as a broker-dealer in securities and was a member of the Midwest Stock Exchange and the National Association of Securities Dealers, Inc. On June 4, 1968, Leston B. Nay, President of First Securities and owner of 92 percent of its stock, murdered his wife and committed suicide, leaving a suicide note which described First Securities as being bankrupt because of his thefts and which described certain "escrows" which were his creation as "spurious." On June 10, 1968, the SEC initiated this receivership action against First Securities. The claims which are the subject matter of this appeal derive from Nay's creation of and dealings in a fraudulent escrow account. The district court appointed a special master to hear and determine the validity of these claims. In accordance with the recommendation and findings of the special master, the district court disallowed all of the instant claims in their entireties, and this appeal followed.

The special master specifically found most of the following facts to be established by the evidence, which findings the district court approved. The remaining facts stated here are undisputed in the record. The fifteen claimants had each been brokerage clients of First Securities, buying and selling securities through First Securities in regular fashion. Each received investment advice from Nay, and each knew Nay to be the president of First Securities. Nay advised each of the claimants that he was able to offer to the claimant an opportunity to invest in a so-called escrow which would yield a high rate of interest

(generally twelve percent per annum, but later reduced to nine percent). As to fourteen of the claimants he recommended investment in the escrow when the claimants were actually in the offices of First Securities. He explained that the escrow opportunity had come to him because he had done a favor for a small investment company through First Securities. Although Nay was always somewhat vague and secretive about the details of the escrow (he explained that the escrow was necessarily a "secret" between First Securities and an unnamed finance company), he described the escrow as being a fund which was to be used as the principal from which a small loan company would make loans. He further explained that the loan company could charge up to 2½ percent per month interest under the law, thus enabling the investors in the escrow to realize the high rates of interest promised. Typically, upon being persuaded by Nay that the escrow was the best possible investment for them, the claimants sold legitimate securities through First Securities for purposes of obtaining the necessary cash to invest in the escrow. First Securities effected the sales, collected its commissions and submitted the proceeds to the claimants, who then drew their personal checks payable to Nay or to a bank for his account. Subsequent transactions with regard to the escrow were not in the form usual to dealings between customers and First Securities, nor was the escrow reflected in periodic accountings by First Securities to the claimants.

Upon receipt of the cash investment from the claimants Nay usually executed a handwritten document which acknowledged such receipt and confirmed the terms of the arrangement. Sometimes Nay gave promissory notes to the claimants. All, or substantially all, of Nay's correspondence with the claimants was written on letterhead stationery of First Securities. Some of the letterhead stationery included the words, "Leston B. Nay, President," on the upper left hand portion thereof. All of the stationery bore the legend, "Member Midwest Stock Exchange," in addition to the firm's name and address. Although much of Nay's correspondence with regard to the escrow transactions was handwritten by him, a substantial portion was typed by his secretary at First Securities.

During the early years of Nay's fraudulent enterprise, the claimants were paid interest from time to time based upon their "investments" in the escrow. Such payments were made by Nay's personal check sent in an envelope upon which First Securities' name and address appeared in the upper left hand corner in the position normally occupied by the return address of the sender. The interest payments were erratic and delinquent during the later years of the operation of the scheme. During the period of 1953 through 1967, with the exception of 1955, Nay's files revealed that he sent Treasury forms 1099 to each of the claimants which showed that the distributions of interest to them had been reported as a deduction from his personal income tax return. The claimants reported the interest payments on their income tax returns in accordance with the forms 1099 received from Nay. In connection with Internal Revenue Service audits of Nay's individual federal income tax returns for 1956 and 1965, he sent form letters to each of the claimants asking that they verify the amount of his indebtedness to them and the amount of interest he had paid them during the year in question. Each of the claimants returned the letters marked and signed to indicate their concurrence with the amounts shown thereon as received from Nay. Also, from time to time some of the claimants referred to their escrow investments in correspondence with Nay as being personal loans to him.

As to some of the claimants, Nay's receipt for investments in the escrow took the form of a purported agreement or promissory note from Nay to the claimant which recited, "This agreement is binding and inures to the benefit of your and my heirs, executors and as-

signs." Upon direct inquiries from several claimants, Nay vaguely indicated that the escrow would be settled in the event of his death either by the bank which was supposed to be the locus of the escrow account, or by his wife or his lawyer. He told one claimant that in such event a claim should be filed against his estate. On the other hand, he advised some that since the funds were in escrow they would be handled outside the probating of his estate. He also told one claimant who was seeking to withdraw some of his investment from the escrow that his money "was safe at First Securities." By the same token, Nay from time to time had successfully dissuaded claimants from withdrawing money from the escrow to invest in other things.

Finally, it is clear that Nay had no actual authority to act for First Securities with regard to the escrow account.' It is also clear that First Securities' employees (other than Nay) knew nothing of the nature of the escrow nor, except for his secretary, even of its existence. Nay had forbidden anyone other than himself to open mail addressed to him, and in his absence all such mail was simply allowed to pile up on his desk, even if it was addressed to First Securities for his attention.

The claimants assert that the foregoing facts entitled them to recover from First Securities their losses due to Nay's fraud. They urge the propriety of that result on two grounds: that Nay acted with apparent authority as the common law agent of First Securities and that Nay and First Securities violated or are liable for violations of Section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 of the Securities and Exchange Commission and Rule 27 of the Rules of Fair Practice of the National Association of Securities Dealers, Inc. The special master and the district court rejected claimants' view on both theories and dismissed the claims. We reverse.

I

Claimants' assertion that First Securities is liable as his principal for Nay's fraud is based in part on sections 261 and 262 of the Restatement of Agency, Second (1958). Section 261 states:

> A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

Section 262 provides:

> A person who otherwise would be liable to another for the misrepresentation of one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of this.

Example one of the illustrations given under section 262 is as follows:

> P, whose business is that of advising persons concerning investments, represents to T that A is his manager. At P's office T seeks advice of A concerning investments. A, acting solely to promote an enterprise of which he is the owner, made deceitful statements in regard to it, on the strength of which T invests and loses. P is subject to liability to T.

Claimants also cite Blackburn v. Witter, 201 Cal.App.2d 518, 19 Cal.Rptr. 842 (1962). The *Blackburn* case was also concerned with the liability of a broker-principal for the defrauding of a customer by its salesman-employee. The customer in *Blackburn* was a widow without business experience who had regularly been given investment advice by one Long, an employee of Dean Witter & Co. Long persuaded the customer to sell some of her regular securities through him as agent for Dean Witter & Co. and to invest the proceeds of the sale in a nonexistent company which he said would produce a higher return than usual. Long gave the customer receipts

which were different from those used by his employer, later supplemented by his personal promissory notes bearing ten percent interest. The customer admitted that the transactions with Long were never reflected in periodic summaries of her transactions with Dean Witter & Co. submitted to her by that firm. The court there rejected the employer's argument that the widow knew or should have known that the transactions involving Long and the nonexistent company were personal to Long and not a part of his agency for his employer and held Dean Witter & Co. liable, citing Sections 261 and 262 of the Restatement. The crux of the court's decision was its conclusion that Dean Witter & Co. could not treat the portion of the transaction by which Long sold the widow's stock at her request as being within the scope of his agency and, at the same time, expect to prevail on its argument that the purchase of the fraudulent stock by Long with the proceeds of the sale was Long's personal act outside the agency relationship. 201 Cal.App.2d at 523, 19 Cal.Rptr. at 845.

▇ The special master concluded that in the instant case Nay did not act with apparent authority from First Securities *vis-à-vis* the claimants. Since the facts upon which he based that conclusion were essentially those we have recited above, we have determined that his conclusion is clearly erroneous. The genesis of the special master's error is unclear, but apparently he believed that verbal representations by Nay that he was acting on behalf of his principal, First Securities, were essential to liability. We believe that sections 261 and 262 of the Restatement, example 1 to section 262, and Blackburn v. Witter, *supra*, belie such a position. We hold that those authorities are clearly dispositive of the agency theory herein and that they compel the conclusion that claimants are entitled to recover from First Securities. There is no direct authority on point in the Illinois case law, but we are convinced that Illinois courts would not differ on this issue from the rule stated in the Restatement and the *Blackburn* case.

## II

Claimants also contend that they are entitled to assert their claims under the Securities Exchange Act of 1934 against First Securities on the ground that it is liable for Nay's fraud for one or more of the following reasons: (1) First Securities was a "controlling person" as to Nay within the intendment of section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a); (2) First Securities, at best, aided and abetted Nay in violating section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated pursuant thereto, 17 C.F.R. § 240.10b–5; or (3) First Securities failed to satisfy its duty to supervise Nay pursuant to Rule 27 of the Rules of Fair Practice of the National Association of Securities Dealers, Inc.

It is clear that Nay's conduct violated the provisions of section 10(b) of the Securities Exchange Act of 1934 and its regulatory corollary, Rule 10b–5. Both proscribe the use of any means of interstate commerce or of facilities of national securities exchanges to defraud or deceive in connection with the purchase or sale of any security. The parties do not contest the fact of Nay's violation of section 10(b) and Rule 10b–5, for he clearly violated both of them. Defendant asserts, however, that Nay's fraud is not properly chargeable to First Securities. We disagree. We believe that First Securities is liable for Nay's fraud under the Securities Exchange Act on each of the three theories advanced by the claimants.

▇ Section 20(a) of the Securities Exchange Act of 1934 provides as follows:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such

controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

Although the statute does not define what constitutes "control" for purposes of the foregoing, we have no doubt that Nay, being the employee of First Securities as its president, was "controlled" by First Securities within the intendment of section 20(a). *See* Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane, 85 F.Supp. 104, 122–123 (W.D.Ark.1949).

■ The special master ignored this argument of claimants based on section 20(a), but the district judge rejected it, saying merely:

> . . . First Securities Company would be liable for the act of its "controlled person" under Section 20(a) only if it acted in bad faith or induced the unlawful acts. There is not sufficient evidence that First Securities acted in bad faith with respect to the escrow funds, or that it directly or indirectly induced the fraud.

However, the district judge gravely misapprehended the operation of section 20(a). As the Eighth Circuit observed in Myzel v. Fields, 386 F.2d 718, 738 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968): "The statute is remedial and is to be construed liberally. It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable." Indeed, it has been held that "to satisfy the requirement of good faith [in order for a controlling person to avoid liability thereby] it is necessary for the [controlling person] to show that some precautionary measures were taken to prevent the injury suffered," Lorenz v. Watson, 258 F.Supp. 724, 732 (E.D.Pa.1966), and "that failure of the controlling person to maintain and diligently enforce a proper system of internal supervision and con-

trol constitutes participation in the misconduct and the violation will be deemed to have been committed, not only by the controlled person, but also by the controlling person who did not perform the duty to prevent it." Hecht v. Harris, Upham & Co., 283 F.Supp. 417, 438 (N. D.Cal.1968), modified on other grounds, 430 F.2d 1202 (9th Cir. 1970). Given the fact that First Securities enforced the rule established by Nay that mail addressed to First Securities at its office marked for his attention was to be opened by no one but Nay, we believe the firm directly facilitated the prolonging of the fraud, if not its very inception. We hold that First Securities was a controlling person of Nay and failed to act in good faith as those terms are used in section 20(a).

■ Claimants also assert that First Securities is liable for Nay's fraud as his aider and abetter without regard to whether it was a controlling person as to him. It is clear that one who aids and abets a violation of section 10 of the Securities Exchange Act of 1934 and Rule 10b–5 may be held civilly liable to one who is injured thereby. Brennan v. Midwestern United Life Ins. Co., 417 F. 2d 147 (7th Cir. 1969); Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir. 1969); Anderson v. Francis I. DuPont & Co., 291 F.Supp. 705 (D.Minn.1968); Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane, *supra*. Moreover, liability predicated on aiding and abetting may be founded on less than actual knowledge and participation in the activity proscribed by section 10 and Rule 10b–5. Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., *supra*, 410 F.2d at 144.

■ In the *Buttrey* case we held that a broker-dealer would be liable as an aider and abetter to violations of section 10 and Rule 10b–5 committed by a *customer* of the brokerage firm. The act of the brokerage firm which provided a foundation for such vicarious liability was allowing the customer to trade in securities through a cash account in spite of his known financial instability

and "erratic trading practices." In the *Brennan* case we held that an issuer of stock was liable as an aider and abetter to similar violations committed by a dealer in the stock on the ground that the president and general counsel of the issuer knew or should have known that the dealer was defrauding purchasers of the issuer's stock. We believe that the instant case presents a far more compelling case for the imposition of liability as an aider and abetter than either *Buttrey* or *Brennan*. Here, First Securities made Nay its president, provided him with the trappings of a successful investment counsellor, held him out as providing such counsel, and then wilfully allowed Nay's enforcement of a rule regarding the opening of mail which was antithetical to the prevention of frauds of the type which occurred. We hold that First Securities aided and abetted Nay's fraud and is jointly liable therefor.

 Finally, claimants urge us that First Securities failed to comply with Rule 27 of the Rules of Fair Practice of the National Association of Securities Dealers, Inc., of which it was a member. The rules of the N.A.S.D. were promulgated pursuant to section 15A of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*-3. Rule 27 provides in pertinent part as follows:

(a) Each member shall establish, maintain and enforce written procedures which will enable it to supervise properly the activities of each registered representative and associated person to assure compliance with applicable securities laws, rules, regulations and statements of policy promulgated thereunder and with the rules of this Association.

(b) Final responsibility ·for proper supervision shall rest with the member. . . .

(c) Each member shall be responsible for keeping and preserving appropriate records for carrying out the member's supervisory procedures. Each member shall review and endorse in writing, on an internal record, all transactions and all correspondence of its registered representatives pertaining to the solicitation or execution of any securities transaction.

We have no doubt that the enforcement of Nay's rule regarding the opening of mail is sufficient without more to constitute a violation of Rule 27. Such violations provide a basis for private damage actions where the rule violated serves to protect the public. Avern Trust v. Clarke, 415 F.2d 1238, 1242 (7th Cir. 1969) ; Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., *supra*, 410 F.2d at 142–143. First Securities is properly liable for Nay's fraud because of its violation of Rule 27 of the N.A.S.D.

The judgment of the district court is reversed.