**Ernest MITZNER et al., Plaintiffs,**

v.

**CARDET INTERNATIONAL, INC., an Illinois Corporation, et al., Defendants.**

**M.L.C. CORPORATION, Defendant-Counterplaintiff,**

v.

**Ernest MITZNER and Corinne Mitzner, Plaintiffs-Counterdefendants.**

**No. 73 C 125.**

United States District Court, N. D. Illinois, E. D.

April 15, 1975.

Ronald Goldberg, Richard L. Brauer, DePaul Law Clinic, Chicago, Ill., for plaintiffs.

Richard J. Hill, Wheaton, Ill., for Marvin Phillips.

Neiman & Grais, Chicago, Ill., for Butkus.

Robert A. Tingler, Chicago, Ill., for M.L.C. Corp.

Barry J. Freeman, Chicago, Ill., for Serlin and others.

## MEMORANDUM ORDER

MARSHALL, District Judge.

Plaintiffs,[1] 1972 purchasers of defendant Cardet International, Inc., [hereafter "Cardet"] franchises, bring this action to remedy alleged violations of the Securities Act of 1933, the Illinois Securities Act of 1953, the Securities Exchange Act of 1934 and the rules of the Securities and Exchange Commission. 15 U.S.C. § 77a et seq.; Ill.Rev.Stat., ch. 121½, § 137.1, et seq.; 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. Jurisdiction is predicated on Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v, Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, Section 1331 of the Judicial Code, 28 U.S.C. § 1331, and pendent jurisdiction.

Before me is the motion of defendant Dick Butkus [hereafter "Butkus"] to dismiss the second amended complaint [hereafter "the complaint"] or in the alternative for summary judgment pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. Since material outside the pleadings has been submitted to me, Butkus' motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(b)(16).

Succinctly, the complaint alleges that Cardet sold plaintiffs "Distributor" and "Area Manager" franchises;[2] that Cardet, M.C.L. Corporation, a finance company, and certain Cardet officers, employees and agents induced plaintiffs to purchase Cardet franchises, through false and misleading representations and that such defendants knew their representations were false and misleading.[3] Also, the complaint alleges that all defendants failed to file a registration statement for the sale of securities.[4]

### *Butkus' Alleged Section 10(b) and Rule 10–5 Violations*

Section 10(b) provides in material part:

It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not

---

1. The named plaintiffs are Ernest Mitzner, Corinne Mitzner, Eugene Hoadley and Betty Hoadley. On January 25, 1974, I ordered that the action be maintained as a class action, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The plaintiff class consists of all persons who, during the year 1972, purchased or contracted to purchase, for cash or on credit, Cardet franchises and who did not request exclusion from the plaintiff class, pursuant to the Notice of Class Action sent to them.

2. The "Distributor" franchise contemplated the franchisee's exclusive distribution of Cardet catalogues in a certain area, the purpose of which was to promote the purchase of merchandise from Cardet. The "Area Manager" franchise provided for the exclusive distribution of "drop cards" by the franchisee in a certain area, the purpose of which was to recruit new distributors.

Judge Decker of this court held that the franchise agreements in both instances were investment contracts and hence securities under the Securities Act of 1933. Mitzner v. Cardet International, Inc., 358 F.Supp. 1262 (N.D.Ill.1973).

3. Here liability is premised on alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) [hereafter "Section 10b"], and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 [hereafter "Rule 10b–5"].

4. Liability for failure to file a registration statement is founded on violations of Section 6 et seq. of the Securities Act of 1933, 15 U.S.C. § 77f and Section 5 of the Illinois Securities Act of 1953, Ill.Rev.Stat., ch. 121½, § 137.5.

so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange:

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

Butkus' alleged liability for violations of Section 10(b) and Rule 10b–5 is based on statements made by and about him and his relationship with Cardet which plaintiffs assert were false.

The materials submitted in respect to Butkus' pending motion show that on October 1, 1971 Butkus, through his agent Talent Network, Inc., granted Cardet a license to use Butkus' name and image to promote Cardet's business. While the license agreement was between Talent Network and Cardet, Butkus personally approved it.

On January 11, 1972 Butkus wrote to Sheldon Serlin, president of Cardet:

Dear Shelly:

It is a pleasure for me to be associated with Cardet International, Inc., one of the largest personalized merchandise distribution networks in the nation.

I sincerely believe that Cardet International's marketing program will, in a very beneficial way, improve the lives of the thousands of people in the Cardet network.

I have chosen Cardet International for my future, and I would recommend it to everyone.

Yours truly,
/s/ Dick Butkus.

In May, 1972 the Mitzner plaintiffs purchased a Cardet distributorship franchise after receiving promotional materials (alleged here to be the equivalent of a prospectus) in which the prospect was urged to "TEAM UP WITH DICK BUTKUS" and was told that "Dick Butkus, one of Pro Football's All-Time Greats, has chosen Cardet International for his business future. As a Cardet International Distributor, you will be in your own business, with full support of a Team of Professionals." Both statements were made in immediate physical proximity to a likeness of Butkus in his football regalia in which his number "51" is displayed as prominently as is his countenance.

Butkus has virtually conceded the falsity of these statements. Thus in his brief, while urging he was not a salesman of the franchises, he states, ". . . he has had no contact with anyone either directly or indirectly connected with Cardet nor in fact did he ever do so." Of course he does not urge that the representations regarding his affiliation with Cardet were not material.

The complaint alleges that "the defendants", which by the prefatory language of the complaint includes Butkus, made false and misleading statements regarding Butkus' relationship with Cardet. The brief resume of facts given here supports the allegation.

Furthermore, plaintiffs urge that Butkus is liable as an aider and abettor.

■ Liability is incurred for aiding and abetting violations of the securities laws. Hochfelder v. Ernst & Ernst, 503 F.2d 1100 (7th Cir. 1974); Hochfelder v. Midwest Stock Exchange, 503

F.2d 364 (7th Cir. 1974); SEC v. First Securities of Chicago, 463 F.2d 981 (7th Cir. 1972), cert. denied, 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972); Brenan v. Midwestern Life Insurance Company, 417 F.2d 147 (7th Cir. 1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970); Carroll v. First National Bank of Lincolnwood, 413 F.2d 353 (7th Cir. 1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970); Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, 410 F.2d 135 (7th Cir. 1969), cert. denied, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969). One may aid and abet Section 10(b) and Rule 106–5 violations by affirmative action, by inaction in combination with affirmative action or by inaction alone. Hochfelder v. Ernst & Ernst, *supra*; Hochfelder v. Midwest Stock Exchange, *supra.* To establish an aiding and abetting claim under Section 10(b) and Rule 10–5, one must show "that the party charged with aiding and abetting had knowledge of or, but for a breach of duty of inquiry, should have had knowledge of the fraud, and that possessing such knowledge the parties failed to act due to an improper motive or breach of a duty of disclosure." Hochfelder v. Midwest Stock Exchange, 503 F.2d at 374.

■ Butkus personally wrote Serlin on January 11, 1972 that he was "associated with Cardet" and that he "[had] chosen Cardet International for [his] future. . . ." This letter was turned into exhortations by Cardet to "team up" with Butkus and the representation that he had "chosen Cardet International for his business future." If these representations were false, Butkus knew it. He personally put them into currency. He cannot avoid personal liability because he contracted with Cardet through a talent broker.

■ Plaintiffs also contend that Butkus' alleged duties of inquiry and disclosure arose from the licensing agreement. Succinctly, plaintiffs argue that a celebrity who licenses the use of his name and image has a duty to inquire into the practices of the licensee. No authority is cited for the proposition and our research has disclosed none. Whether a plenary trial will result in the development of facts giving rise to such a duty remains to be seen. Certainly, however, the celebrity has a duty not to make false statements for use by the business licensee in the sale of its securities.

■ Butkus' motion for summary judgment on the Section 10(b) and Rule 10b–5 claims is Denied.[5]

### Butkus' Liability for Sale of Unregistered Securities

■ Section 5(a) of the Securities Act of 1933, 15 U.S.C. § 77e(a), makes it actionable for "any person, directly or indirectly" to sell unregistered securities "through the use or medium of any prospectus or otherwise" or to carry or cause to be carried any such unregistered securities through the mails or in interstate commerce "for the purpose of sale or for delivery after sale." Section 5(c) makes it actionable for "any person, directly or indirectly," to offer to sell unregistered securities by making use of the mails or any form of communication in interstate commerce. Section 4(1) of the Act limits meaning of person to issuers, underwriters and dealers. 15 U.S.C. § 77d(1). The Cardet franchises were not registered pursuant to Section 6 of the 1933 Securities Act. 15 U.S.C. § 77f. Consequently, the question is whether Butkus' conduct falls within Section 5(a) or (c) and on his motion for summary judgment he has the burden of showing that it does not as a matter of law.

While it does not presently appear that Butkus was a central mover in the distribution and sale of Cardet franchises, the talent licensing agreement provided

---

5. Butkus also challenges the Section 10(b) and Rule 10b–5 allegations of the complaint as deficient under Rule 9(b) of the Federal Rules of Civil Procedure. I reject the argument. See Tomera v. Galt et al., 511 F.2d 504 (7th Cir. 1975).

for the use of his name and image in the sale of the franchises. Furthermore, in his January 11, 1972 letter to Sheldon Serlin, Butkus stated that he had chosen Cardet as his future and "would recommend it to everyone." At trial Butkus' participation in the sale of Cardet franchises may prove to be *de minimis*, but at this time I cannot hold, as a matter of law, that the registration requirements of Section 5 do not apply to him.[6]

A person who participates in the distribution of securities through an issuer, underwriter or dealer, violates Section 5 if the securities are not registered. 1 L. Loss, Securities Regulation, 644 (2d ed. 1961); see Securities & Exchange Commission v. North American R. & D. Corp., 424 F.2d 63, 82 (2d Cir. 1970).

Accordingly, Butkus' motion for summary judgment on the alleged violations of Section 6 of the Securities Act of 1933 and Section 5 of the Illinois Securities Act of 1953 is Denied.

---

6. For similar reasons, summary judgment is not appropriate for the alleged violations of the Illinois Securities Act of 1953.