**In the Matter of F. W. KOENECKE & SONS, INC., Bankrupt.**

**Appeal of Glenn R. HEYMAN, Trustee, Plaintiff.**

**Appeal of Alex R. BIRNIE, Defendant.**

**Nos. 78–1635, 78–1744.**

United States Court of Appeals, Seventh Circuit.

Heard April 2, 1979.

Decided Aug. 17, 1979.

Rehearing Denied Sept. 27, 1979.

Rehearing Denied Oct. 30, 1979.

Louis W. Levit, Chicago, Ill., for Heyman.

Jerome E. Wexler, Chicago, Ill., for Birnie.

Gerald D. Mindell, Chicago, Ill., for appellee.

Before SPRECHER and BAUER, Circuit Judges, and HOFFMAN,* Senior District Judge.

BAUER, Circuit Judge.

This appeal arises from a judgment of the district court which reversed in part and affirmed in part an order of a bankruptcy judge in proceedings involving the F. W. Koenecke corporation. The bankruptcy judge entered a judgment for the trustee in bankruptcy against several named defendants as a result of misappropriation of funds from the corporation shortly before it discontinued operations. The district court affirmed as to several defendants but reversed as to the accounting firm employed by the trustee. The trustee now appeals from that portion of the district court's order which exonerated the accounting firm. The individual accountant assigned to do the work of the accounting firm appeals from that portion of the order which established a constructive trust in favor of the trustee on real property acquired and placed in the joint names of the individual accountant and his wife, in which appeal the wife joins.

## I.

As a first step in reviewing the decision of the district court, we must briefly outline the factual background. The appellant and cross-appellee Glenn R. Heyman is the trustee in bankruptcy of F. W. Koenecke & Sons, a bankrupt corporation that has been one of the largest distributors of cigarettes in the Midwest. Robert Koenecke was the sole shareholder and president of Koenecke,

while Clifford Kahler was the sales manager and assistant treasurer. The accounting firm of James T. Wilkes & Company acted for many years as the outside accountant for Koenecke. Alex R. Birnie was the senior accountant on Wilkes' staff who had been in charge of all assignments undertaken on behalf of the Koenecke corporation. In addition, Birnie was privately employed by Koenecke, and this employment was apparently unknown to Wilkes.

The business operations of Koenecke were closed on February 25, 1969. On February 18 and 22, 1969, Clifford Kahler caused three checks to be drawn on the corporation's account in the amounts of $15,000, $100,000 and $200,000. These checks were used to purchase three cashier's checks as follows:

| Payee | Amount |
|---|---|
| Robert F. Koenecke | $200,000.00 |
| Clifford E. Kahler | 100,000.00 |
| Clifford E. Kahler | 15,000.00 |
| | $315,000.00 |

On April 10, 1969, the $200,000 check payable to Robert Koenecke was endorsed and delivered to Kahler, with the following legend written by Birnie: "Pay to Clifford E. Kahler as return of deposit for purchase in full." On May 6, 1969, Birnie and Kahler opened an account at the First National Bank of Chicago Heights in Birnie's name as nominee for Kahler and deposited the $200,000 check.

In March, 1969, Birnie advised the trustee that the books of the bankrupt corporation were not complete for the months of February and March. Pursuant to a court order entered on March 27, 1969, the trustee retained James T. Wilkes & Company "to complete the postings of all cash disbursements for February and March, 1969, and for recording and posting all receipts to the proper subsidiary ledger, to correct entries to reflect dishonored items, returned merchandise and other not yet recorded items."

Birnie was designated by Wilkes to head this assignment, and he performed or super-

---

* The Honorable Walter E. Hoffman, Senior Judge of the United States District Court for the Eastern District of Virginia, is sitting by designation.

vised virtually all of the accounting services. In May or June, 1969, the books and accounting records were returned to the trustee. They did not, however, accurately reflect the transactions involving the $315,-000 paid to Kahler and Koenecke. On the contrary, the records contained certain false entries that had been made by Birnie in an effort to conceal the fraud. As a result, the trustee did not discover that the $315,000 had been disbursed to Kahler and Koenecke until July, 1971.

On June 26, 1972, the trustee commenced the present action against Wilkes, Birnie, Kahler, Koenecke, and Koenecke's wife. After an extensive trial, the bankruptcy judge found all of the defendants to be jointly and severally liable for the entire $315,000. He refused, however, to assess interest against the defendants for any or all of the period prior to judgment.

Birnie and the Wilkes defendants appealed to the district court from the judgments against them, and Heyman cross-appealed from the bankruptcy judge's denial of pre-judgment interest. The district court affirmed the money judgment against Birnie, Kahler, Koenecke, and Koenecke's wife, but reversed the judgment against Wilkes. The court also allowed the trustee's claim for pre-judgment interest from the date of transfer and imposed a constructive trust on Birnie's property in the amount of $39,-292.02.

The trustee now appeals from that portion of the district court order which set aside the judgment against Wilkes. Birnie and his wife appeal from that portion of the order which imposed a constructive trust on the residence in the joint names.

## II.

The first major issue in this appeal is whether the district court correctly concluded that the Wilkes accounting group is not liable to the trustee for breach of contract. In reversing the bankruptcy judge on this issue, the lower court relied on several findings, the most significant of which are: (1) the fraudulent entries were made by Birnie before Wilkes was hired by the trustee; (2) Wilkes did not have a contractual duty to check the accuracy of pre-existing entries since it was hired only to "update" the records; and (3) Birnie's conduct cannot be imputed to Wilkes since he was acting for his own purposes when he made the fraudulent entries.

We see no significance, however, in the date of the fraudulent entries, for it is clear that Birnie not only failed to disclose the false entries *after* Wilkes was hired, but indeed committed two specific acts in furtherance of the fraud. On April 10, 1969, he personally caused the $200,000 check to be endorsed over to Kahler, and on May 6, 1969, he deposited the proceeds of that check in his "nominee" account at the First National Bank of Chicago Heights.

If this conduct can be imputed to Wilkes, it would constitute, in our view, a breach of Wilkes' contractual obligations to the trustee. We think it clear that the terms of the contract contemplated that Wilkes would complete or correct any entries in the Koenecke books that were known to be incorrect—or, at the very least, that Wilkes would commit no acts in furtherance of a fraud on the estate. Accordingly, the key issue is whether liability for Birnie's conduct can be imputed to Wilkes under the applicable law of agency.

On this point, we held in *Securities Exchange Commission v. First Securities Co. of Chicago*, 463 F.2d 981, 985–6 (7th Cir. 1972), *cert. denied*, 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972), that the Illinois courts would follow Section 261 of the Restatement of the Law of Agency, Second (1958), which provides:

> "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit fraud upon third persons is subject to liability to such third persons for the fraud."

It is our view that Section 261 is controlling in this case, for Wilkes clearly authorized Birnie to discharge its contractual obligations and thereby placed him in a position that enabled him to continue the fraud

while apparently acting within his authority. We therefore hold that Wilkes is liable to the trustee for breach of contract.

■ Wilkes argues, however, that even if it did breach a contractual duty, the damages claimed by the trustee did not result from that breach. It is apparently Wilkes' position that it did not cause the loss of the $315,000 since the money was taken by Kahler and Koenecke before it was hired to update the books. But if Birnie had properly discharged Wilkes' contractual duties and disclosed the fraudulent entries to the trustee, the court could have easily placed the funds under its control before they were dissipated. We thus find no merit in Wilkes' claim that its breach of contract did not result in the loss of the $315,000. Accordingly, we reverse the district court's judgment on this issue, and in addition, find Wilkes liable for pre-judgment interest from the date the action was filed.

### III.

■ In a separate appeal, Birnie challenges the district court's imposition of a constructive trust on his residence. Both the lower court and the bankruptcy judge found that Birnie received nearly $40,000 of the misappropriated funds for his services and used the money as a down payment for the purchase of a house. On a review of the record, we find these conclusions to be amply supported by the evidence. Accordingly, since Birnie's share of the misappropriated funds can be traced to his residence, we affirm the district court's imposition of a constructive trust on that residence in the amount of $39,292.02.

AFFIRMED IN PART AND REVERSED IN PART.